UNITED STATES DISTRICE COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISIION

| | | |
|---|---|---|
| EUGENIE ALVARES, | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| BOARD OF EDUCATION OF THE | ) | |
| CITY OF CHICAGO, | ) | |
|     Defendant | ) | |

### COMPLAINT AT LAW

NOW COMES the Plaintiff, EUGENIE ALVARES (hereafter "Plaintiff") by and through her attorney John M. O'Toole of O'Toole Law Firm, LLC, and files this Complaint against the Defendant BOARD OF EDUCAITON OF THE CITY OF CHICAGO (hereafter "Defendant") for violations of the discrimination based on Race, Age, and Retaliation.

### BACKGROUND AND GENERAL ALLEGATIONS

1. This is an action for violations of the civil rights laws identified immediately above.

2. Jurisdiction over the statutory violations is conferred as follows: for the Race discrimination claim – Title VII of the Civil Rights Act of 1964 (hereafter "Title VII"), 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 42 U.S.C. § 2000e-5(f)(3), and for Age discrimination under the Age Discrimination in Employment Act – 29 U.S.C. § 621. The Retaliation claim is based on Title VII.

3. The Plaintiff is business and accounting tenured high school teacher of Indian (Asian) descent and was over 50 years old during the time of the complained of activities and violations of law by the Defendant.

1

4. Defendant is an organ of the city government of Chicago.

5. Plaintiff worked in the Chicago Public Schools (hereafter "CPS") since September of 2000.

6. Plaintiff was terminated by Defendant on August 27, 2017. Prior to her termination, Plaintiff had filed a Complaint with the Equal Employment Opportunity Commission (hereafter "EEOC") on November 2, 2016 and amended same on November 26, 2017 (**Exhibit A**). Plaintiff's right to sue letter is attached (**Exhibit B**).

7. Plaintiff started teaching at George Westinghouse High School (hereafter "WHS") - a school within CPS) on or about August 20, 2012. Plaintiff experienced race discrimination based on the following actions by Defendant:

(a) On September 23, 2016, Plaintiff fell in her classroom and injured her shoulder, hip, and back. Plaintiff was evaluated by her doctor on September 26, 2016 and returned to work on September 28, 2018. Plaintiff was in pain and took a sick day on Monday October 3, 2016. Plaintiff came to school on October 4, 2016 for a meeting with the principal, Patrick McGill, in spite of the pain. Plaintiff then took a sick day on October 5, 2016 and a personal day on October 6, 2016 to rest. Plaintiff's pay was docked, and she was required to present a doctor's note excusing her from not being in school. Plaintiff explained that she did not see the doctor on October 3, 2016, October 5, 2016 or October 6, but took that time to rest after her fall. Plaintiff was later accused, sometime after October 4, 2016, of taking time off to avoid her REACH evaluation, (even though she made it a point to attend the meeting on October 4, 2016) a tool used by CPS administrators to assess teacher performance. Defendant refused to pay Plaintiff for the days she had to take off, and, it was only after Plaintiff filed a grievance with the union and a complaint with the EEOC that Defendant did finally Plaintiff for her days off.

2

(b) As part of Defendant's discriminatory treatment, Plaintiff was to have been evaluated for the last time on May 29, 2016. Instead, Plaintiff was the only teacher observed after the deadline or on June 9, 2016. Plaintiff had just returned from leave with a reasonable workplace accommodation and was on reduced work assignment. As part of this discriminatory treatment, Defendant not only chose to observe Plaintiff on her first day back but was in her classroom at 7:45 – before class even began. Plaintiff also repeatedly requested for a fair and unbiased evaluation by someone other than the Defendant – she was denied the her requests. Other teachers had several performance evaluators.

(c) On April 4, 2016, Plaintiff requested permission to attend a professional development (hereafter "PD") on April 8, 2016 – based on Project Based learning outlined in her PD plan. Plaintiff was refused permission stating that her presence was needed in the building.

(d) Plaintiff, unlike her white counterparts, was not provided with resources for her teaching of students. This incidence occurred in the fall of 2016, even though Plaintiff had requested not only the resources but also the digital codes for her students to access the curriculum. Plaintiff did finally receive the resources in November - after Thanksgiving. The school had started in September.

(e) All Career and Tech instructors (hereafter "CTE") were to have a classroom and an office to maintain the materials and supplies.

(f) Plaintiff was accused of having her class cheat on a 2014-2015 Quick Books Certification Exam at WHS. The investigation determined that there was no credible evidence to support an accusation finding that Plaintiff provided answers to her students or a screenshot of questions to be asked on the exam. See **Exhibit C**.

## COUNT I – RACE DISCRIMIANTION

1.  Plaintiff incorporates by reference paragraphs 1-7 of the Background and General Allegations (hereafter "BGA") inclusive as though set forth fully herein as paragraph 1 of Count I.

2.  In each of the instances detailed in subparagraphs (a) – (f), Plaintiff was treated differently than her white counterparts due to her race. As mentioned previously, Plaintiff is Indian (Asian) and asserts the following corresponding to the subparagraphs identified *supra* as follows:

    (a)  Plaintiff knows of no instance when a white teacher had to bring a doctor's note to school after having been out ill – Plaintiff was required to.

    (b)  Plaintiff knows of no white teacher being evaluated after the window for such evaluations had closed – Plaintiff was.

    (c)  Plaintiff is aware of another teacher, who is white, and was given permission to attend PD – Plaintiff was told that she couldn't go.

    (d)  Plaintiff knows of no white teacher who was similarly inconvenienced.

    (e)  All CTE teachers had a classroom as well as an office – Plaintiff did not and is a CTE teacher.

    (f)  No white teacher was accused of having her students cheat on a major national or certification exam – Plaintiff had been so accused and a major investigation was instigated of which no credible evidence showing cheating by Plaintiff or her students was shown.

3.  Because of the above treatment, which can only be based on race, Plaintiff was unlawfully discriminated against.

## COUNT II – AGE DISCRIMIANTION

1.  Plaintiff incorporates by reference paragraphs 1-7 of the BGA inclusive as though fully set forth as paragraph 1 of Count II.

2. Like Count I above, Plaintiff who is over fitty (50) years old asserts the following with respect to each of the subparagraphs of paragraph 7 of the BDA as follows:

    (a)    No teacher under age 40, as far as Plaintiff knows, was required to bring a doctor's note after having been out ill.

    (b)    No teacher under 40 was required to be evaluated after the window for such evaluations had closed.

    (c)    The white teacher who attended the PD was under 40, while Plaintiff is over 50 years old.

    (d)    Plaintiff knows of no teacher under 40 who was not similarly inconvenienced.

    (e)    Only CTE teachers had a classroom and office and most were under 40 years of age.

    (f)    No teacher under 40 had been investigated in a major cheating scandal while Plaintiff was at Westinghouse High School

3. Because of the above treatment experienced by Plaintiff who was over 40 years old, Plaintiff was singled out and discriminated against due to her age.

### COUNT III – RETALIATION

1. Plaintiff incorporates by reference paragraphs 1-7 of the BGA inclusive as though fully set forth as paragraph 1 of Count III.

2. Plaintiff was an employee of Defendant starting in 2000 up until her termination on August 27, 2017.

3. Plaintiff engaged in a statutorily protected activity when she filed her two (2) EEOC Complaints on November 2, 2016, and, November 26, 2017. For clarification purposes,

there was actually one (1) EEOC Complaint filed. When Plaintiff was laid off, she was asked to add to her previously filed EEOC Complaint.

4. Plaintiff was retaliated against by the following actions by Defendant:

(a) All faculty are evaluated by three (3) different administrators as a measure to remove bias. However, in Plaintiff's case, she was only evaluated by Mr. Patrick McGill, principal of WHS, who had it in for Plaintiff because of her previous EEOC Complaint filings.

(b) Prior to filing her EEOC Complaints, Plaintiff was evaluated by "consulting teachers" in 2012 and received high marks. Consulting teachers advise the teacher under remediation on how to improve teaching skills and how to successfully comply with the remediation program – see **Exhibit D**. However, after having filed her EEOC Complaints in 2016, Plaintiff - after only one observation by Patrick McGill while acting as a consulting teacher - received an "unsatisfactory" rating. Also, McGill did none of the tasks required by consulting teachers – again see **Exhibit D**.

(c) Plaintiff had been working at WHS since August of 2012, however, in the staff book, her name is conveniently omitted despite her making it known to the administration – see **Exhibit E** (page 27).

(d) Plaintiff's doctor's note from April 14, 2016 (**Exhibit F**) evidences the work-related stress imposed on Plaintiff by Defendant such that she had to take medical leave from April 25, 2016 to June 9, 2015 (**Exhibit G**). The work-related stress was caused by Patrick McGill who did such things as walk into Plaintiff's classroom several times unannounced, talked with students disparagingly of Plaintiff, and, is believed to have told at least one student that he would like to suspend Plaintiff.

(e) Plaintiff's Final Evaluation is shown as Unsatisfactory. The Final Evaluation mentions that Plaintiff turned in only two (2) Student Improvement Plans (hereafter "SIP's") (**Exhibit H**), but the evidence shows this not to be true (**Exhibit I).**

(f) Plaintiff was falsely accused of turning in late her Broadcast Unit Plan after September 2, 2015, (**Exhibit J**) but, this was not the case – see **Exhibit K**.

6

(g) As a result of the above actions, Plaintiff was referred to a Performance Improvement Plan Disciplinary Write up (**Exhibit L**), of which she filed a Grievance (**Exhibit M**) and supplied Comments (**Exhibit N**).

(h) In 2014/2015, Plaintiff received a "Year in Perspective" report including a Developing Rating from Patrick McGill. After receiving a Developing Rating, a teacher is required to have a Professional Development Plan (hereafter "PDP") in place before a later observation would occur – this didn't happen to Plaintiff. Plaintiff received an invitation for an observation on November 23, 2015 and a preconference on December 3, 2015, and, an observation on December 4, 2015 – the first day following the Thanksgiving break. As an afterthought and not realizing he not yet done a PDP, Patrick McGill sent Plaintiff an E-Mail inviting her to a PDP on November 30, 2015. The PDP is a plan in place to improve instruction and to then be observed (**Exhibit O**). On December 2, 2015, Patrick McGill sent Plaintiff an E-Mail for pre-meeting for 3 disciplinary actions, PIP (**Exhibit P**). Plaintiff's Notice for a PDP was late and after the notice of a formal observation - a breach in protocol by Patrick McGill.

(i) Plaintiff's pay was then unlawfully docked – see **Exhibit Q.**

(j) Plaintiff also asserts that resources needed for teaching her courses courses were unnecessarily and consciously delayed- see **Exhibit R.**

(k) Plaintiff was accused of being persistently late and written up for it, where, in fact, Plaintiff was late only two (2) days – one was on November 23, 2015 resulting from a monster storm – see **Exhibit S**.

(l) Defendant closed Plaintiff's position effective August 7, 2017. This occurred when Plaintiff was on medical leave from November 28, 2016 until her return to work date of August 23, 2017 – this is when Plaintiff's doctor gave her clearance to return. Plaintiff was told that the reason her position was closed was because it had been open too long due to her medical condition. Yet, Defendant has had positions open for over a year – see **Exhibit T.** It is stated "Before she (Sharron Anderson) arrived at Westinghouse, the three-year Information Technology and Computer Program was in a dire strait. *It had not had an instructor in over a year* (emphasis supplied), the students had become disinterested, and the curriculum had become disorganized and misaligned with the goals of the institution. (emphasis supplied).

7

Defendant had lied to Plaintiff and used her temporary absence from teaching as a pretext to terminate her because of her EEOC filings.

5. The sum and substance of the actions by Defendant and identified above was to retaliate against Plaintiff because of her EEOC filings. Prior to her EEOC filings, Plaintiff received exemplary reviews and other accolades and signs or accomplishment as shown immediately below:

(a) Receipt of the 2015 Illinois Jump$tart's Coalition 2015 Teacher Scholarship that recognized Plaintiff's significant ability, initiative or achievement involving personal finance or economics education – see **Exhibit U.**

(b) Plaintiff's recognition as a "consulting teacher" – see **Exhibit V.**

(c) Plaintiff had her picture taken with the former City of Chicago treasurer, who has since retired (**Exhibit W**).

(d) Plaintiff had one of her students, George Curry, named as one of the "National Literary Scholars" for securing a 98% rating on the "Financial Literacy Certification Test" and even arranged for a representative of the Chartered Financial Analyst (hereafter "CFA") speak to her class – see **Exhibit X.**

(e) Plaintiff, as an indicator of her success, received a letter of recognition from the Public Broadcasting Station (hereafter "PBS") – see **Exhibit Y.**

(e) Plaintiff was nominated to apply for the EverFi Teacher Ambassador Program which is considered an honor – see **Exhibit Z.**

(f) Plaintiff received a letter of appreciation from Shannon McNeil – a representative of the then Illinois Office of the Comptroller, Judy Baar Topinka for her commitment to her students and as well as her energy and enthusiasm – see **Exhibit AA.**

(g) One of Plaintiff's students, Patricia Terry, won a full expense paid trip to China to learn about their culture and history – see **Exhibit BB.**

## **CONCLUSION**

1. As a direct and proximate result of Defendant's actions as outlined in the BGA and each of the Counts, Plaintiff has suffered damages for which she is entitled including, but not limited to, special and general damages in amounts to be determined at trial.

2. Plaintiff suffered throughout her employment with Defendant's "continuing violations" of her civil rights not to be discriminated against because of her race and age and not to be retaliated against staring in 2014-2015 academic year up to and including her termination on August 27, 2017.

WHEREFORE, Plaintiff demands judgment as follows:

1. For special and general damages according to proof at trial not less than $100,000;
2. For attorney fees pursuant to 42 U.S.C.A. § 1988[b}, and, costs of suit;
3. Prejudgment interest on all amounts claimed;
4. Back pay;
5. Front pay;
6. Post-judgment interest; and.
7. Such other relief as the Court deems just and proper

Respectfully Submitted, _____
John M. O'Toole, Attorney for Plaintiff

| | |
|---|---|
| Attorney No.: | 6199003 |
| Firm: | O'Toole Law Firm, LLC |
| Address: | 35 E. Wacker Dr., Suite 650, Chicago, IL 60601 |
| Office Phone: | (312) 546-5057 |
| Cell Phone: | (312)560-8981 |
| FAX: | (312)546-5123 |
| E-Mail: | john@otoolelaw.net |